HUNTINGTON NATIONAL BANK, Appellant,

v.

BURCH et al., Appellees.

[Cite as *Huntington Natl. Bank v. Burch*, 157 Ohio App.3d 71, 2004-Ohio-2046.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2003–CA–52.

Decided April 23, 2004.

72

Robert D. Ross, for appellant.

Douglas W. Geyer and David D. Herier, for appellees.

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellant Huntington National Bank appeals from an order setting aside and vacating a sale of property in a foreclosure action. Huntington National Bank contends that the trial court abused its discretion because (1) it failed to protect the interests of the mortgagor/debtor and the mortgagee/creditor; (2) it failed to give finality to the judicial sale; and (3) it failed to apply the doctrine of caveat emptor.

{¶ 2} Although a trial court must, pursuant to R.C. 2329.31, confirm a sale of property that is in conformity with R.C. 2329.01 to R.C. 2329.61, we conclude that the sheriff's appraisers failed to appraise the property in conformity with R.C. 2329.17. Pursuant to *Glendale Fed. Bank v. Brown* (Jan. 21, 1994), Montgomery App. No. 13976, 1994 WL 12475, at * 3, we conclude that the sheriff's appraisers in this case failed to appraise the property as they were sworn to do in conformity with R.C. 2329.17, because the interior of the house was not examined during the sheriff's appraisal and the interior condition of the house has an impact on the value of the property.

{¶ 3} We conclude that it was in the interests of justice to set aside a sale where the sheriff's appraisers failed to appraise the property as they were sworn to do in conformity with R.C. 2329.17, and notice of the sheriff's sale was inadequate in that it failed to inform the public that the appraisal did not include an interior examination of the house. We conclude that the trial court did not abuse its discretion in ordering that the sale of the property be set aside and vacated.

{¶ 4} Because the record shows that the purchaser-appellee Robert L. Burton did not have "a full and unimpeded opportunity" to inspect the premises prior to his purchase of the property, and because he was not advised, by the notice of sheriff's sale published in the newspaper, that the appraisal referred to therein did not include an interior examination of the premises, we conclude that the requirements of caveat emptor are not met in this case. Thus, we conclude that Huntington National Bank's contention that the trial court abused its discretion in failing to apply the doctrine of caveat emptor is without merit.

{¶ 5} Accordingly, the judgment of the trial court is affirmed.

I

{¶ 6} In December 2001, Huntington National Bank filed a complaint for foreclosure against Shelli L. Burch, alleging that Burch defaulted in the payment of a mortgage note executed to the Huntington Mortgage Company and assigned to Huntington National Bank in 1995. Burch failed to answer or otherwise plead. The trial court awarded judgment in favor of Huntington National Bank and ordered a sale of the property, located at 1616 West Wittenberg Boulevard, Springfield, Ohio 45506. The Clark County Sheriff's Department had the property appraised by Jim McCuddy, Norman Watts, and Jack Walsh, three disinterested appraisers. After viewing the exterior of the property, the appraisers estimated the value of the property to be $50,000.

{¶ 7} A sheriff's sale of the property was held in May 2002. Huntington National Bank made an opening bid in the amount of $33,334. Robert L. Burton, who had previously inspected the exterior of the property, attended the sheriff's sale and bid $41,500 for the property, which was accepted. After the sale, Burton made a ten percent down payment to the Clark County Sheriff's Department.

{¶ 8} In June 2002, prior to the confirmation of the sale, Burton filed a motion to set aside or vacate the sale, alleging that the property had been found to be a health hazard due to mold and that the appraisal of the property was wholly inadequate. Huntington National Bank filed an opposition to the motion, contending that the sale should be confirmed based on the doctrine of caveat emptor. After a hearing on the motion in June 2003, the trial court granted Burton's motion ordering that the sale of the property be set aside and vacated and that the Clark County Sheriff return to Burton his deposit on the property. Because Burton had relied on the appraised value of the property and the property had no real value, the trial court found that to confirm the sale would be unconscionable. From the judgment of the trial court, Huntington National Bank appeals.

II

{¶ 9} Huntington National Bank's assignments of error are as follows:

{¶ 10} "The trial court abused it [sic] discretion by failing to protect the interests of the mortgagor/debtor and the mortgagee/creditor in the foreclosure action.

{¶ 11} "The trial court abused its discretion by failing to apply the doctrine of caveat emptor to the sale in question and to the third-party purchaser.

{¶ 12} "The trial court abused its discretion by failing to give finality to judicial sales by vacating the sale based upon a lack of value for the purchaser."

{¶ 13} Because Huntington National Bank's assignments of error are intertwined, we will address them together. Huntington National Bank contends that the trial court abused its discretion because (1) it failed to protect the interests of the mortgagor/debtor and the mortgagee/creditor; (2) it failed to give finality to the judicial sale; and (3) it failed to apply the doctrine of caveat emptor. Huntington National Bank contends that the primary goal of a foreclosure sale is to protect the interests of the mortgagor-debtor and to ensure that the mortgagee-creditor receives payment for unpaid debts. Huntington National Bank contends that a corollary to this goal is the desire to obtain the maximum amount of money from a sheriff's sale of property. Huntington National Bank argues that these goals are to benefit the parties, not a third-party purchaser. Huntington National Bank also contends that the general policy of the law is to give judicial sales finality. In addition, Huntington National Bank contends that the doctrine of caveat emptor applies to third-party purchasers at judicial sales, and, therefore, Burton is bound by his actions.

{¶ 14} A trial court may confirm or vacate a sheriff's sale of property, but it must exercise sound discretion in doing so. *Reed v. Radigan* (1884), 42 Ohio St. 292, 294, 1884 WL 239. A trial court's decision refusing confirmation of a sale of property by the sheriff will not be reversed by a reviewing court absent an abuse of discretion. *Laub v. Warren Guarantee Title & Mtge. Co.* (1936), 54 Ohio App. 457, 468, 23 Ohio Law Abs. 514, 8 O.O. 220, 8 N.E.2d 258. A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 15} The trial court must confirm the sale of property if the sale is made in conformity with R.C. 2329.01 to 2329.61. R.C. 2329.31. Specifically, R.C. 2329.31 provides that "[u]pon the return of any writ of execution for the satisfaction of which lands and tenements have been sold, on careful examination of the proceedings of the officer making the sale, if the court of common pleas finds that the sale was made, in all respects, in conformity with sections 2329.01 to 2329.61, inclusive, of the Revised Code, it shall direct the clerk of the court of common pleas to make an entry on the journal that the court is satisfied of the legality of such sale, and that the officer make to the purchaser a deed for the lands and tenements."

{¶ 16} Burton contends that the trial court was not required to confirm the sale of the property pursuant to R.C. 2329.31, because the sale did not conform with R.C. 2329.17. Burton contends that the appraisers failed to conduct the appraisal in conformity with R.C. 2329.17, because their appraisal did not result from an actual viewing of the property in that they did not inspect the interior of the house. We agree.

{¶ 17} R.C. 2329.17 provides that "[w]hen execution is levied upon lands and tenements, the officer who makes the levy shall call an inquest of three disinterested freeholders, residents of the county where the lands taken in execution are situated, and administer to them an oath impartially to appraise the property so levied upon, upon actual view. They forthwith shall return to such officer, under their hands, an estimate of the real value of the property in money."

{¶ 18} We have held that "in cases where the condition of a house may have an impact on the value of the real property on which it stands, that house should be entered by appraisers sworn to conduct their appraisal 'upon actual view' as required by R.C. 2329.17." *Glendale Fed. Bank v. Brown* (Jan. 21, 1994), Montgomery App. No. 13976, 1994 WL 12475, at * 3. We concluded that a trial court abuses its discretion by confirming a sale of property where "the interior of [the] house was not examined during the sheriff's appraisal, and the interior condition of [the] house would have an impact on the value of the property, [because] the sheriff's appraisers failed to appraise the property as they were sworn to do in conformity with R.C. 2329.17." Id.

{¶ 19} The record shows that the sheriff's appraisers failed to appraise the property in conformity with R.C. 2329.17. James McCuddy, one of the sheriff's appraisers, testified that he appraised the property at 1616 West Wittenberg Boulevard without conducting an internal examination of the house. McCuddy testified that the appraisal was based on an external examination only. McCuddy testified that knowledge of the mold growth in the interior of the house would have drastically impacted his appraisal. Dennis R. Propes, a sanitarian with the Clark County Combined Health District, testified that he conducts mold assessments for residential and commercial properties for the health department. He testified that he has a bachelor's degree in environmental science, majoring in microbiology, and that he has trained with the United States Environmental Protection Agency, Ohio Department of Health, and other organizations. Propes testified that he was familiar with Ohio Department of Health guidelines and EPA guidelines. He testified that he has also worked for a hazardous remediation firm where his job was to do remediation on problem properties. He testified that he is familiar with the general costs associated with remediation.

{¶ 20} Propes testified that he inspected the interior of 1616 West Wittenberg Boulevard and concluded that "[p]retty much every square inch of that property has mold growth of some kind or another on it in the interior." Propes testified that in addition to the interior surfaces, he inspected the superstructure of the house and that "most of it had mold growth of some kind or other." Propes testified that "[i]f that home would be occupied, I would request immediate vacation of the house and condemn it." Propes testified that to remedy the problem, "[m]ost of the materials in that home would have to be removed and

replaced." Propes testified that the easiest and most cost-effective remedy would be demolition and destruction of the property, and that it would not be cost effective to do anything other than that.

{¶ 21} Michael A. Foster, owner and president of Results Home Buyers, Incorporated, testified that he is in the business of buying, rehabilitating, and selling single-family residences in Clark County. Foster testified that he examined the interior of the house at 1616 West Wittenberg Boulevard. Foster testified as follows:

{¶ 22} "Q. This home that you're talking about at 1616 West Wittenberg Boulevard, do you have an opinion as to whether or not it can be rehabilitated?

{¶ 23} "A. This time I believe it's borderline. At my cost I would have to get it at almost next to nothing to even have a chance to save it and hope to get any kind of money on it.

{¶ 24} "Q. So if I'm correct in what you're saying, as it sits there today, it has a value of almost zero?

{¶ 25} "A. Sir, that house scares me as a rehabber.

{¶ 26} "Q. By scare, in your business you're saying I don't know whether I could do it for the value of it or not?

{¶ 27} "A. Right, putting the rehab costs, the money it would take to rehab the house, my holding costs, my sales cost, and how much the house would be worth afterwards, may not be worth—

{¶ 28} "Q. What you put in it.

{¶ 29} "A. Right. May not make anything on it as a businessman.

{¶ 30} "Q. And this is stuff that you do regularly.

{¶ 31} "A. Yes, sir.

{¶ 32} "Q. If you were told that you had to replace most of the timber structure in this house, that certainly would affect your opinion, would it not?

{¶ 33} "A. If I knew the damage was that extensive, I wouldn't touch the house."

{¶ 34} Based on the testimony of McCuddy, Propes, and Foster, we conclude that the property was not appraised in conformity with R.C. 2329.17. McCuddy's testimony establishes that the interior of the house was not examined during the appraisal. The testimony of McCuddy, Propes, and Foster establishes that the interior condition of the house has an impact on the value of the property. McCuddy testified that knowledge of the mold growth would have drastically impacted his appraisal of the property. Propes testified that "[p]retty much every square inch of that property has mold growth of some kind or another on it

in the interior," and that the easiest and most cost-effective remedy would be demolition and destruction of the property. When asked whether the house could be rehabilitated, Foster testified that he would have to get the house at next to nothing to make any money on it. After viewing only the exterior of the property, the appraisers estimated the value of the property to be $50,000. Based on the testimony of McCuddy, Propes, and Foster, it is clear that the interior condition of the house would have an impact on the value of the property. Pursuant to *Glendale,* supra, we conclude that the sheriff's appraisers failed to appraise the property in conformity with R.C. 2329.17, because the interior of the house was not examined during the sheriff's appraisal and the interior condition of the house would have an impact on the value of the property.

{¶ 35} In addition, the notice of the sheriff's sale provided only the following: "Said property has been appraised at $50,000 and cannot be sold for less than two-thirds of that amount." The notice did not contain any warning that the appraisal did not include an interior examination of the house. Failure to inform the public that the appraisal did not include an interior examination results in inadequate notice to a potential purchaser, especially in this case where the failure to conduct an interior examination led to a great disparity between the appraised value of the property and its actual value.

{¶ 36} While it is true that the primary goal of a foreclosure sale is to protect the interests of the mortgagor-debtor and to ensure that the mortgagee-creditor receives payment for unpaid debts, *Ohio Sav. Bank v. Ambrose* (1990), 56 Ohio St.3d 53, 56, 563 N.E.2d 1388, we find that the purchaser's interests may also be protected to avoid gross injustice, as in this case. "[T]he trial court always possesses the power in its sound discretion to set aside any sale in the interests of justice[.]" *Michigan Mtge. Corp. v. Oakley* (1980), 68 Ohio App.2d 83, 85, 22 O.O.3d 76, 426 N.E.2d 1195. We conclude that it is in the interests of justice to set aside a sale where the notice of the sheriff's sale is inadequate in that it fails to inform the public that the appraisal performed did not include an interior examination of the house. We conclude that the trial court did not abuse its discretion in ordering that the sale of the property be set aside and vacated. Huntington National Bank argues that procedural requirements designed to ensure the adequacy of appraisals in foreclosure actions are intended to protect the interests of the parties to the foreclosure action, not the interests of purchasers or prospective purchasers. We agree that those procedural require-ments are aimed primarily at protecting the interests of the parties to the action. But it is in the interests of parties to foreclosure actions, in general, that the interests of purchasers and prospective purchasers at foreclosure sales not be abused to an unconscionable degree. If bidders at foreclosure sales are afforded no protection whatsoever, there will be fewer of them to participate in the

competitive-bidding process, and they will be likely to discount their bids to reflect the great risks to which they are exposed. For this reason, we conclude that the general interests of parties to foreclosure actions in a healthy, competitive-bidding process militates in favor of exercising the discretion of the trial courts to afford modest protection to the interests of bidders and prospective bidders.

{¶ 37} In the case before us, it is conceded that Burton, the purchaser, had no opportunity to inspect the interior of the premises before bidding. In view of this court's decision in *Glendale Fed. Bank v. Brown*, supra, Burton could reasonably have anticipated that the appraisers conducted an examination of the interior of the premises before making their appraisal, or, if they had not done so, that the notice of the sale would have reflected that fact. Under these circumstances, we conclude that it was no abuse of discretion for the trial court to find that even a rudimentary protection of Burton's interests as a bidder would require the setting aside of his bid based upon an appraised value of $50,000, when a belated examination of the interior of the premises indicated that it might have no value at all, in view of the mold.

{¶ 38} Despite having already reached the conclusion that the trial court did not abuse its discretion in vacating the sale, we note that the requirements of caveat emptor are not met in this case.

{¶ 39} The Ohio Supreme Court has held that the doctrine of caveat emptor "precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the full and unimpeded opportunity to examine the premises, and (3) there is no evidence of fraud on the part of the vendor." *Layman v. Binns* (1988), 35 Ohio St.3d 176, 179, 519 N.E.2d 642.

{¶ 40} The record shows that Burton did not have "a full and unimpeded opportunity" to inspect the premises prior to his purchase of the property. Burton testified that he made an external examination of the property but that he did not have access to the interior of the house prior to his purchase. He testified that the house was locked. Burton testified that the first time he saw the interior of the house was after the sheriff's sale, when he had a locksmith let him into the house. When questioned on cross-examination about whether he looked in the windows of the house, Burton testified that the windows were too high and he could not see in. Because the record shows that Burton did not have "a full and unimpeded opportunity" to inspect the premises prior to his purchase of the property, we find that the requirements of caveat emptor are not met in this case.

{¶ 41} We conclude that Huntington National Bank's contention that the trial court abused its discretion in failing to apply the doctrine of caveat emptor is without merit. Huntington National Bank's assignments of error are overruled.

### III

{¶ 42} All of Huntington National Bank's assignments of error having been overruled, we affirm the judgment of the trial court.

Judgment affirmed.

BROGAN and WOLFF, JJ., concur.