OPINION
{¶ 1} Defendant-appellant Dream House Mortgage Corporation appeals from the denial of its motion to vacate judgments entered in favor of plaintiff-appellees Paul and Barbara Griffin. Dream House contends that the trial court abused its discretion by *Page 2 
finding that Dream House failed to establish excusable neglect. Dream House also contends that the trial court erred in finding that Dream House failed to present evidence of valid defenses to claims for fraud and violation of the Consumer Sales Practices Act. We conclude that the trial court did not abuse its discretion in denying the motion for relief from judgment, because Dream House failed to establish excusable neglect. In view of this holding, the issue of whether Dream House had a meritorious defense is moot. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} In May 2007, the Griffins filed a five-count complaint against Dream House, in connection with various transactions and dealings between the parties between 2004 and November 2006. The complaint alleges that the Griffins own property on Stewart Road in Greene County, Ohio, and that Dream House is a Rhode Island corporation licensed in Ohio to conduct mortgage lending and brokerage, including the underwriting of first and second mortgages.
 {¶ 3} The complaint further alleges that Dream House contacted the Griffins in 2004 and 2005, and offered to provide mortgage broker services to procure a single refinancing loan for the Griffins, at a 6% interest rate. Allegedly, Dream House acted deceptively by representing that it would provide single mortgage financing to replace first and second mortgages that encumbered the Griffins's residence, with new loans of 6%, when Dream House had no intention of doing so. According to the complaint, these deceptive acts took place during 2004, 2005, and 2006, and culminated in a sham closing that occurred at the Griffin home in November 2006. At that time, Dream House *Page 3 
represented that it would pay the November payments due on the Griffins's existing mortgages. However, Dream House failed to pay the November payments, and in fact, never intended to pay off the mortgages. This failure purportedly caused deficiency notices to issue and detrimentally affected the Griffins's credit. The complaint also alleged that Dream House regularly conducts business though an associate, First Choice Title Co., and had involved First Choice in its corrupt practices.
 {¶ 4} The five causes of action in the complaint include: (1) violations of the Home Solicitation Sales Act; (2) violations of the Consumer Sales Practices Act; (3) violations of the Mortgage Broker Registration Act; (4) fraud, deceit, and misrepresentation; and (5) violations of the Corrupt Practices Act.
 {¶ 5} The Griffins first attempted service by certified mail on Dream House though CT Corporation, a statutory agent, but were notified of failure of service, in that the service was not deliverable as addressed and could not be forwarded. Subsequently, the Griffins instructed the clerk to make service by certified mail on Dream House at 385 South Main St., Providence, Rhode Island. This was done, and on May 29, 2007, the certified mail service was accepted by Tonya Cianci, who was a Dream House employee.
 {¶ 6} Dream House failed to file an answer, and the Griffins filed a motion for default judgment on July 3, 2007. The trial court granted a default judgment on July 13, 2007, and scheduled a damages hearing for August 15, 2007. The court sent a copy of the default judgment order and notice of damages hearing to Dream House at the Providence, Rhode Island address.
 {¶ 7} Dream House did not appear for the damages hearing in August 2007. *Page 4 
However, the Griffins and their attorney appeared, and presented testimony to a magistrate. On August 21, 2007, the magistrate filed a decision finding in favor of the Griffins as to each of the five causes of action. The magistrate's decision noted that Barbara Griffin had testified about the facts of the case, and that her "testimony proved the truth of the allegations of the Complaint that are incorporated herein fully as the uncontested facts of this Case." Magistrate's Decision, p. 2.
 {¶ 8} According to the magistrate's decision, Dream House had promised the Griffins financing up to $600,000 on a fully amortized, 30 year loan at 6% interest, and the Griffins relied on that promise. Dream House provided a $448,000 first mortgage to the Griffins that was an adjustable rate mortgage with payments of interest, only, to start. The mortgage payments would include principal and interest after ten years, and the interest rate would vary between 6.25% and 11.25%. Dream House also provided a second mortgage in the amount of $137,000 at 9.25% interest for thirty years, with a balloon payment at the end of the term. After the first two payments were in place, Dream House sold the mortgages to a different mortgagee.
 {¶ 9} The complaint alleged that Dream House had represented that if the Griffins waited until April, 2006, Dream House would place them in a single mortgage at the desired interest rate. However, Dream House never intended to comply with its promise. By representing that a closing was scheduled on the refinancing, Dream House also caused the Griffins's insurer to make Dream House the mortgage-loss payee on the property in September 2006, without the Griffins' knowledge, when Dream House knew no actual closing would be scheduled.
 {¶ 10} Subsequently, on November 14, 2006, Dream House conducted a *Page 5 
refinancing procedure, as set forth in a settlement statement that was offered as an exhibit at the hearing. The settlement statement contained errors that were discovered by the title agent, and Dream House faxed the title agent a revised settlement statement, which the Griffins signed. The title agent mailed the signed settlement statement to Dream House, in accordance with Dream House's instructions. As part of the closing process, Dream House assured the Griffins that Dream House would pay the two November 2006 mortgage payments on their existing mortgages.
 {¶ 11} The refinancing and closing procedures were a sham, as Dream House never processed the mortgage and never paid off the two existing mortgages. As a result, the mortgage payments for November were not timely paid and deficiency notices issued from the Griffins' existing mortgagees.
 {¶ 12} When the Griffins contacted Dream House about the matter, they were put in contact with Kenneth Feranti, who was not the same representative with whom they had previously dealt. The prior representative was an individual named Joe Pontes. Feranti and an attorney later called the Griffins and stated that the mortgage that Pontes had represented as complete and as having been funded by Dream House, was not in Dream House's system. Dream House thereafter attempted to refinance the two existing mortgagees with a new mortgagee, but the application was disapproved because the two November 2006 payments were delinquent.
 {¶ 13} Based on the above facts, the magistrate concluded that Dream House's conduct was deceptive and unconscionable. The Griffins' expert, Dr. Larsen, testified as to damages, after being qualified as an expert in economics, finance, and financing services. Dr. Larsen stated that the $137,000 mortgage would cost the Griffins *Page 6 
$37,378.25 more than the 30-year fixed, fully amortized mortgage Dream House had promised. Likewise, the $448,000 mortgage would cost $92,975.91 more. The magistrate concluded, therefore, that the damages were $132,354.15, and that the actual damages were the same under each of the five counts in the complaint. Pursuant to R.C. 1345.09, the magistrate trebled the damages, for a total award of $397,062.45. The magistrate also asked the Griffins to submit an affidavit in support of their request for attorney fees.
 {¶ 14} On August 21, 2007, the trial court mailed a copy of the magistrate's decision to Dream House at the Providence, Rhode Island address. The magistrate's decision clearly states that the decision would not take effect until adopted by the trial court, and that objections to the magistrate's decision must be filed in accordance with Civ. R. 53.
 {¶ 15} Dream House did not file objections to the magistrate's report, and the trial court adopted the magistrate's decision as its order on September 10, 2007. The trial court noted that Dream House did not file objections either to the magistrate's decision or to the affidavit in support of attorney fees and expenses, which totaled $2,125.50. The trial court further noted that it had independently reviewed the magistrate's decision, and had found no error of law or defect apparent on the face of the decision. The court then awarded judgment against Dream House in the amount of $399,574.95, plus 8% interest from the filing date of the judgment entry. A copy of the judgment order was sent to Dream House at the Providence, Rhode Island address by the assignment commissioner on the date of filing, and again on September 11, 2007, by the clerk of courts. *Page 7 
 {¶ 16} Subsequently, on October 22, 2007, Dream House filed a motion to set aside the default judgment. The motion was accompanied by the affidavit of Janine Atamian, who was employed as in-house counsel for Dream House. Atamian stated that Dream House is a lender licensed pursuant to the Rhode Island Department of Business Regulation.
 {¶ 17} Atamian stated that she had reviewed the business records pertaining to the Griffin property. In August 2004, the Griffins executed a second mortgage in favor of Dream House in the amount of $142,500, and were provided with a "Notice of Right to Cancel." In 2005, Dream House refinanced the existing loans, and provided two new loans, pursuant to which the Griffins executed both a $448,000 first mortgage and a $112,000 second mortgage in favor of Dream House. The Griffins again were given notices of right to recission in connection with these transactions. In September 2005, the second mortgage was refinanced and replaced with a $137,000 second mortgage, and the Griffins were given a "Notice of Right to Cancel" regarding this mortgage as well. None of these facts are inconsistent with the findings of the trial court.
 {¶ 18} Atamian's affidavit is silent about any of the details of the November 2006 closing. Atamian stated only that Mr. Griffin contacted Ken Ferranti of Dream House on December 22, 2006, to report that he had not been funded on a Dream House loan that closed in 2006. However, Mr. Ferranti was unable to find the file in the system. No explanation was offered about the closing or the actions of Mr. Pontes, although he was employed by Dream House during the time of the events in question.
 {¶ 19} Atamian's affidavit further indicated that Dream House had received notice on August 27, 2007, of a judgment against it on the complaint filed by the Griffins. *Page 8 
Dream House thereafter determined that the complaint had been sent by certified mail and had been signed for by Dream House's employee, Tonya Cianci, on June 1, 2007.[1] According to Atamian, the regular protocol is for such items to be forwarded upon receipt to John C. Ponte, president of Dream House, John Savage, counsel for Dream House, and to Atamian. The complaint was not forwarded to these individuals and was not answered. Finally, Cianci, who is no longer employed by Dream House, had no recollection of receiving the claim.
 {¶ 20} After reviewing the materials submitted and the Griffins' response to the motion, the trial court denied the motion to vacate and motion for leave to answer. The trial court concluded that Dream House failed to present evidence showing a meritorious defense to the facts established at the damages hearing in support of the Consumer Sales Practices Act and fraud causes of action. Accordingly, the court did not address the alleged violations under the Home Solicitation Sale Act, the Mortgage Broker Registration Act, or the Corrupt Practices Act. The trial court also concluded that Dream House failed to demonstrate excusable neglect. The court did conclude that Dream House filed the motion within the time limits provided in Civ. R. 60(B).
 {¶ 21} Dream House now appeals from the denial of the motion to set aside the judgment.
 II {¶ 22} Dream House's sole assignment of error is as follows: *Page 9 
 {¶ 23} "WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DREAM HOUSE'S MOTION TO VACATE JUDGMENT AND NOT ALLOWING THE CASE TO BE DECIDED ON ITS MERITS."
 {¶ 24} Under this assignment of error, Dream House contends that it has met all the requirements necessary for setting aside the judgment. Parties or their legal representatives may be relieved from a final judgment under Civ. R. 60(B) for the following reasons:
 {¶ 25} "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken."
 {¶ 26} "To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE AutomaticElec, Inc. v. ARC *Page 10 Industries, Inc. (1976), 47 Ohio St.2d 146, at paragraph two of the syllabus.
 {¶ 27} "These requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." Strack v. Pelton, 70 Ohio St.3d 172, 174, 1994-Ohio-107. Motions for relief from judgment under Civ. R. 60(B) are addressed to the sound discretion of the trial court, and the court's ruling "will not be disturbed on appeal absent a showing of abuse of discretion."Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77. An abuse of discretion occurs when a trial court "makes a decision that is unreasonable, arbitrary, or unconscionable." Huntington Natl. Bank v. Burch,157 Ohio App.3d 71, 75, 2004-Ohio-2046, at ¶ 14, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 28} After reviewing the record, we find no abuse of discretion. As was noted, if any of the three requirements under Civ. R. 60(B) is not met, the motion to vacate is properly denied. For purposes of convenience, we will first consider the issue of excusable neglect. We have previously held that:
 {¶ 29} "An act is one of `neglect' when it constitutes an omission or failure to do a thing that can be done, but it may also import a failure of care or attention in the doing or omission of a given act. `Excusable neglect' in the context of a Civ. R. 60(B)(1) motion generally means the failure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the processes of the court, but in consequence of some unavoidable or unexpected hinderance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party." Federal Nat.Mortg. Assn. v. Banks (Dec. 6, 1991), Montgomery App. No. 12692. Accord,Hal v. Flower Hosp., Lucas App. *Page 11 
No. L-07-1423, 2008-Ohio-5295, at ¶ 21, and Vanest v. Pillsbury Co. (1997),124 Ohio App.3d 525, 537.
 {¶ 30} "Courts generally find excusable neglect in those instances where there are `unusual or special circumstances' that justify the neglect of a party or her attorney." Hai, 2008-Ohio-5295, at ¶ 21. However, no such circumstances have been shown to exist in the present case. The trial court noted in its decision that Dream House established neglect, but not excusable neglect. We agree with the trial court.
 {¶ 31} Prior to the time that the judgment entry adopting the magistrate's decision was filed in September 2007, the trial court had sent several entries and notices to the address listed for Dream House. Atamian's affidavit does not indicate that this address was incorrect, and, in fact, it is the address at which Dream House's employee accepted service of process.
 {¶ 32} In addition to the original complaint that was sent by certified mail, and accepted by Dream House's employee on May 29, 2007, the trial court also sent Dream House copies of the following documents: (1) the default judgment entry and notice of the August 2007 hearing on damages, which was filed in July 2007; (2) the magistrate's decision, which was filed in August 2007; and (3) the court order adopting the magistrate's decision, which was filed in September 2007. Despite these repeated notices, Dream House failed to take any action until October 2007, and offered no explanation for its failure, other than to assert that the original complaint was not timely forwarded to corporate officials by its employee.
 {¶ 33} Furthermore, Atamian's affidavit indicates that Dream House did receive notice on August 27, 2007, of the complaint. Although Atamian does not specify what *Page 12 
was received at that time, the logical assumption is that the document in question would have been the magistrate's decision, which was filed on August 21, 2007. This was the trial court's assumption, and it is our assumption as well, since the magistrate's decision is the only document that would have been mailed at that particular time.
 {¶ 34} The magistrate's decision clearly stated that a default judgment had been granted against Dream House, that objections to the magistrate's decision on damages must be filed in accordance with Civ. R. 53, and that the magistrate's decision would not be final until adopted by the trial court. Despite these clear warnings, Dream House took no action until after the time for filing objections had expired, and for more than six weeks after the trial court had adopted the magistrate's decision and entered final judgment. This is neglect, but it is not excusable.
 {¶ 35} In support of its argument that excusable neglect exists, Dream House relies on our prior decision in Wheeler v. v. Denny's, Inc. (March 11, 1993), Montgomery App. No. 13517. According to Dream House, the circumstances in Wheeler are substantially similar to those of the present case. However, the trial court rejected this argument, and so do we.
 {¶ 36} In Wheeler, a trial court found excusable neglect where a part-time waitress signed a return card for certified mail service, but failed to notify her employers. In discussing whether the trial court had abused its discretion by finding excusable neglect, we considered cases where trial courts had either found or failed to find excusable neglect.
 {¶ 37} We concluded that the facts in Wheeler resided in the middle, between two situations. The first situation was that the complaint and summons had simply *Page 13 
disappeared and the defendant failed to explain by affidavit what had happened, which was not excusable neglect. The second situation occurred where affidavits in the record traced the complaint "from its arrival at the corporate offices until it had reached the proper party sometime after default judgment had been entered." In this latter instance, the neglect was found to be excusable. We ultimately concluded that, due to the principles underlying Civ. R. 60(B), we could not say that the trial court had abused its discretion in Wheeler, when it found excusable neglect. However, we stressed that:
 {¶ 38} "On the other hand, we wish to make it clear that this court is not rendering an opinion that the failure of a party's agent to transmit summons or any legal process to the agent's principal is automatically excusable neglect. We simply rule that the facts in each case are within the sound discretion of the trial court, unless and until a pattern of neglect emerges which will call for the enunciation of a bright line in the law in regard to this issue."
 {¶ 39} No "bright line" has emerged since Wheeler, and the decisions in these situations continue to be fact-intensive. Furthermore, appellate action is constrained by the standard of review, which is abuse of discretion. In this regard, we note that the defendant inWheeler acted almost immediately after becoming aware of the motion for default judgment, by having counsel file a notice of appearance, and by asking to respond to the motion. The notice and request to respond were also filed before the trial court had ruled on the motion for default judgment.[2] Under the circumstances, it would be difficult to conclude, based on our deferential standard of review, that the trial court in *Page 14 Wheeler acted arbitrarily or unreasonably in setting aside the judgment.
 {¶ 40} In any event, we find Wheeler distinguishable, for the reasons previously mentioned. The sole affidavit submitted by Dream House fails to discuss with any specificity what happened to the complaint after it arrived, or why several documents transmitted by the trial court somehow disappeared or were disregarded. The affidavit also fails to explain why Dream House disregarded the clear import of the magistrate's decision and failed to take any action for a substantial period of time thereafter. As a final matter, we stressed in Wheeler that an agent's failure to transmit process does not automatically justify setting a judgment aside. Under the circumstances of the present case, the trial court did not act arbitrarily, capriciously, or unreasonably in concluding that Dream House failed to establish excusable neglect.
 {¶ 41} As was noted, failure to establish any of the three requirements outlined by GTE Automatic Elec, Inc. is fatal.Strack, 70 Ohio St.3d at 174. Because Dream House failed to establish excusable neglect, we are not required to consider whether Dream House possessed a meritorious defense to claims of fraud and violations of the Consumer Sales Practices Act.
 {¶ 42} Dream House's sole assignment of error is overruled.
 III {¶ 43} Dream House's sole assignment of error having been overruled, the judgment of the trial court is Affirmed. *Page 15 
DONOVAN, P.J., and FROELICH, J., concur.
[1] The date in the affidavit is incorrect. The return card filed with the court indicates that Cianci accepted service on May 29, 2007, and that the card was returned and file-stamped by the court on June 1, 2007.
[2] There were conflicting entries, one granting default judgment prior to the defendant's appearance, and one setting the matter for hearing later. The trial court later attempted to clarify the record by setting aside the former entry. *Page 1