[Cite as *Arch Bay Holdings, L.L.C. v. Brown*, 2013-Ohio-5453.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

| | | |
|---|---|---|
| ARCH BAY HOLDINGS, LLC - SERIES 2010A | : | Appellate Case No. 25564 |
| | : | |
| Plaintiff-Appellee | : | Trial Court Case No. 11-CV-1960 |
| | : | |
| v. | : | |
| | : | (Civil Appeal from |
| DANIEL LEE BROWN, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of December, 2013.

. . . . . . . . . . .

PATRICK D. HENDERSHOTT, Atty. Reg. #0062447, Law Office of Patrick D. Hendershott, L.L.C., Post Office Box 1252, Perrysburg, Ohio 43552
          Attorney for Plaintiff-Appellee

DANIEL LEE BROWN, 3624 Camelot Road, Dayton, Ohio 45426
          Defendant-Appellant, *pro se*

. . . . . . . . . . . . .

HALL, J.,

    **{¶ 1}**    Daniel Lee Brown appeals pro se from the trial court's final order confirming a post-foreclosure sheriff's sale of his residence and distributing the proceeds.

{¶ 2} Although Brown's appellate brief lacks assignments of error, we discern three arguments. First, he contends the trial court erred in finding that appellee Arch Bay Holdings had standing to foreclose. Second, he claims the trial court erred in dismissing his counterclaims. Third, he asserts that the trial court erred in confirming the sheriff's sale where no appraisal was performed.

{¶ 3} The record reflects that Arch Bay filed suit against Brown in 2011 to obtain a judgment on a note and to foreclose on a mortgage securing the note. Brown responded with counterclaims. The trial court later entered summary judgment in favor of Arch Bay on its complaint and dismissed Brown's counterclaims. Brown appealed from the trial court's judgment. This court affirmed in *Arch Bay Holdings v. Brown*, 2d Dist. Montgomery No. 25073, 2012-Ohio-4966. In rejecting Brown's argument that Arch Bay lacked standing to foreclose, this court upheld the trial court's finding that Arch Bay properly held the note and mortgage when it filed suit.[1] *Id.* at ¶ 4, 7, 17.

{¶ 4} The record further reflects that Arch Bay purchased Brown's home at a post-foreclosure sheriff's sale. On December 10, 2012, the trial court issued an order confirming the sale and distributing the proceeds. This appeal followed.

{¶ 5} Upon review, we promptly dispose of Brown's arguments about the trial court's dismissal of his counterclaims and Arch Bay's standing to foreclose. Arguments about the counterclaims are barred by res judicata because Brown could have raised them in the prior

---

[1] We note that the trial court's foreclosure ruling included a citation to this court's opinion in *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 194 Ohio App.3d 644, 2011-Ohio-2681, 957 N.E.2d 790 (2d Dist.), which the Ohio Supreme Court subsequently reversed. See *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214. The Ohio Supreme Court held in *Schwartzwald* that a foreclosure plaintiff cannot cure a lack of standing by obtaining an interest in the subject real estate after filing suit. That holding had no impact on Brown's case, however, because the evidence established that Arch Bay properly held the note and mortgage, and therefore had standing, when it filed suit.

appeal, which he filed after the trial court dismissed the counterclaims and filed a decree of foreclosure. With regard to Arch Bay's standing to foreclose, Brown *did* raise that issue in his prior appeal. As set forth above, this court reviewed the evidence and upheld the trial court's finding that Arch Bay had standing because it possessed the note and mortgage when it filed suit. Because challenges to the dismissal of the counterclaims and standing to foreclose are barred by our prior decision, further discussion is unnecessary.

{¶ 6} The only remaining issue involves the alleged lack of a real-estate appraisal. Contrary to Brown's argument, the record reflects that an appraisal was filed with the trial court in December 2011. The three appraisers valued the real estate at $96,000. The trial court's order confirming the sale noted that the $65,500 sale price was the "best bid" and was at least two-thirds of the appraised value.

{¶ 7} Finally, although Brown never challenged the accuracy of the $96,000 appraisal in the trial court or requested a second appraisal, Arch Bay's appellate brief discusses two potential issues regarding the appraisal: (1) whether a second appraisal needed to be performed and (2) whether the appraisers were required to examine the interior of the house.

{¶ 8} With regard to the first issue, the record reflects that the December 2011 appraisal was performed after the trial court issued an order of sale. The trial court vacated the order of sale in February 2012. A second order of sale was issued later that month. It specified that no appraisal was needed because an appraisal already had been performed. The second order of sale remained in existence when Arch Bay purchased the real estate in September 2012. Because Brown never challenged the $96,000 appraisal or requested a second appraisal, he has waived all but plain error with regard to the trial court's reliance on the December 2011

appraisal. Having reviewed the record, we see no error, much less plain error, in that regard.

{¶ 9}     The second issue concerns the appraisers' failure to examine the inside of Brown's home. The notice of sale supports his argument that the appraisers did not examine the interior. On appeal, Brown cites *Glendale Federal Bank v. Brown*, 2d Dist. Montgomery No. 13976, 1994 WL 12475 (Jan. 21, 1994), for the proposition that the appraisers were obligated to examine the interior. He argues that their failure to do so precluded confirmation of the sale. We disagree.

{¶ 10}   In *Glendale*, this court noted that R.C. 2329.17 requires property to be appraised "on actual view." *Glendale* at *2. After considering possible interpretations of that phrase, this court held that "in cases where the condition of a house may have an impact on the value of the real property on which it stands, that house should be entered by appraisers sworn to conduct their appraisal 'upon actual view' as required by R.C. 2329.17." *Id.* at *3. Two subsequent causes help illustrate what this court meant in *Glendale* and demonstrate that the lack of an interior examination was not fatal in the present case.

{¶ 11}   In *Natl. Union Fire Ins. Co. v. Hall*, 2d Dist. Montgomery No. 19331, 2003-Ohio-462, the plaintiff obtained a judgment of foreclosure on the defendant's real estate. The property was sold at a sheriff's sale, and the sale was confirmed. On appeal, the defendant challenged the confirmation of sale based on the appraisers' failure to enter the residence. In rejecting the defendant's argument, this court acknowledged its holding in *Glendale* and reasoned:

> In the instant case, there is no evidence that the condition of the house
> would have impacted the value of the property. In fact, Hall failed to show how he

was prejudiced by the failure of the appraisers to enter the house and view the interior prior to appraising the property. Instead, all three appraisers valued the home at the same amount, and this amount was similar to the estimated value of the property which Hall had provided to the bankruptcy court.

We find no evidence in the record to demonstrate prejudice to Hall by the appraisers' failure to enter the house in conformance with R.C. 2329.17. For this reason, we overrule Hall's final assignment of error.

*Id.* at ¶48-49.

**{¶ 12}** The following year in *Huntington Natl. Bank v. Burch*, 157 Ohio App.3d 71, 2004-Ohio-2046, 809 N.E.2d 55 (2d Dist.), this court affirmed an order vacating a sheriff's sale based on the appraisers' failure to examine the interior of the house. In that case, three appraisers viewed the exterior and estimated the value at $50,000. Robert Burton subsequently purchased the property at a sheriff's sale. After the sale, he entered the house and discovered that it was filled with mold. Burton moved to set aside the sale, arguing that the appraisers had failed to conduct an "actual view" of the property as required by R.C. 2329.17. This court relied on *Glendale* and agreed, reasoning:

Based on the testimony of McCuddy, Propes, and Foster, we conclude that the property was not appraised in conformity with R.C. 2329.17. McCuddy's testimony establishes that the interior of the house was not examined during the appraisal. The testimony of McCuddy, Propes, and Foster establishes that the interior condition of the house has an impact on the value of the property. McCuddy testified that knowledge of the mold growth would have drastically

impacted his appraisal of the property. Propes testified that "[p]retty much every square inch of that property has mold growth of some kind or another on it in the interior," and that the easiest and most cost-effective remedy would be demolition and destruction of the property. When asked whether the house could be rehabilitated, Foster testified that he would have to get the house at next to nothing to make any money on it. After viewing only the exterior of the property, the appraisers estimated the value of the property to be $50,000. Based on the testimony of McCuddy, Propes, and Foster, it is clear that the interior condition of the house would have an impact on the value of the property. Pursuant to *Glendale*, supra, we conclude that the sheriff's appraisers failed to appraise the property in conformity with R.C. 2329.17, because the interior of the house was not examined during the sheriff's appraisal and the interior condition of the house would have an impact on the value of the property.

*Id.* at ¶34.

{¶ 13} Strictly speaking, of course, the condition of a house nearly always will have "an impact" on the value of the property. What this court meant in *Glendale* is that an appraiser's failure to examine the interior will constitute reversible error only where the interior condition so impacts the value established based on an exterior examination that the complaining party can demonstrate prejudicial effect. As in *Hall*, where the record contains no evidence that the interior condition would have impacted the appraised value based on an exterior viewing, the appraisers' failure to enter the house is not prejudicial to anyone. But, as in *Burch*, where the interior condition meaningfully alters, either upwardly or downwardly, the appraised value based on an

exterior examination, then the appraisers' failure to enter the house may be prejudicial and can constitute grounds for relief.

{¶ 14}   Here the record contains no evidence that the interior condition of Brown's home rendered the $96,000 appraisal based on an exterior examination inaccurate. As noted above, Brown also never challenged the appraisal in the trial court. Unlike the purchaser in *Burch*, who had no knowledge that the exterior-only appraisal was too high until after he purchased the mold-filled home, Brown certainly knew at the time of the December 2011 appraisal whether the interior condition of his home made the $96,000 exterior-only appraisal too low.[2] Therefore, he could have objected to the appraisal and raised any issue regarding its accuracy long before the September 2012 sheriff's sale and confirmation of sale.   Under these circumstances, we see no grounds for vacating the confirmation of sale.

{¶ 15}   Based on the reasoning set forth above, the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Patrick D. Hendershott

---

[2]On appeal, Brown alleges that he purchased his home for $35,000 and made "major improvement[s] to his property." (Appellant's Brief at 2). Without more, that allegation is insufficient to dispute an appraised value of $96,000.

Daniel Lee Brown
Hon. Steven K. Dankof