[Cite as *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 194Ohio App.3d 644, 2011-Ohio-2681.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

FEDERAL HOME LOAN MORTGAGE     :
CORP.,

     Appellee,                  :         C.A. CASE NO. 2010 CA 41

v.                              :         T.C. NO.    09CV4380

SCHWARTZWALD et al.,          :         (Civil appeal from
                                             Common Pleas Court)

     Appellants.             :

                                         :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the  3rd  day of  June  , 2011.

. . . . . . . . . .

Scott A. King, and Terry W. Posey Jr., for appellee.

Andrew M. Engel, for appellants.

. . . . . . . . . .

FROELICH, J.

{¶ 1} Duane and Julie Schwartzwald appeal from a judgment of the Greene County Court of Common Pleas, which granted summary judgment to the Federal Home Loan Mortgage Corporation ("Freddie Mac"), denied the Schwartzwalds' cross-motion for summary judgment, and entered a judgment and decree of foreclosure.

{¶ 2} The Schwartzwalds claim that Freddie Mac did not establish that it was the holder of the note and assignee of the mortgage, that Freddie Mac lacked standing to

institute the foreclosure action, and that the trial court should not have granted Freddie Mac the equitable relief of foreclosure due to unclean hands. For the following reasons, the trial court's judgment will be affirmed.

I

{¶ 3} In November 2006, Duane and Julie Schwartzwald purchased the property located at 2202 East Spring Valley Painters Road in Xenia, Ohio. To finance the purchase, they executed a note in favor of Legacy Mortgage in the amount of $251,250 and signed a mortgage granting Legacy Mortgage a security interest in the property.

{¶ 4} According to Julie Schwartzwald's affidavit in response to Freddie Mac's summary-judgment motion, the couple began to have concerns during the summer of 2008 that Mr. Schwartzwald might be laid off from his employment. The Schwartzwalds contacted Wells Fargo regarding their loan. (Mrs. Schwartzwald did not indicate whether Wells Fargo was contacted as the loan servicer or the owner of the note.) Mr. Schwartzwald obtained a new job in Indiana in September 2008, and they placed their home on the market. By early 2009, they could no longer afford the mortgage payments, and they spoke to Wells Fargo about a loan modification or a short sale of the property. In April 2009, the Schwartzwalds had a buyer for a short sale of the property; the closing was set for June 2009 to allow Wells Fargo sufficient time to review the proposed sale. Mrs. Schwartzwald repeatedly spoke with Wells Fargo representatives and received no indications that the request for a short sale would be denied.

{¶ 5} On April 15, 2009, Freddie Mac filed a foreclosure action, alleging that it was the holder of a note, that the note was secured by a mortgage, and that the Schwartzwalds

had defaulted on the note and mortgage.[1]  Freddie Mac sought judgment on the note in the amount of $245,085.18, with interest at the rate of 6.25 percent, as well as any court costs and advances.  Freddie Mac also sought a finding that the mortgage was a valid first lien upon the real estate and an order that the mortgage be foreclosed and the property sold.

{¶ 6}  Freddie Mac attached to the complaint as Exhibit A a purported copy of the mortgage.  The mortgage identified the Schwartzwalds as the borrowers and Legacy Mortgage as the lender.  The mortgage was recorded on December 4, 2006.  A legal description of the property was attached to the complaint as Exhibit B.  No copy of the note was attached; although the complaint alleged that Freddie Mac was the holder of the note, Freddie Mac further alleged that "a copy of [the note] is currently unavailable."

{¶ 7}  On April 24, 2009, Freddie Mac filed a "Notice of Filing of Note," which attached a purported copy of the note signed by the Schwartzwalds.  The note reflected that the Schwartzwalds, as borrowers, agreed to pay $251,250 to Legacy Mortgage, the lender. The note established a 30-year term, to be repaid with interest at a rate of 6.25 percent. Payments were to be made to Wells Fargo Home Mortgage, the loan servicer.  The final page was blank except for two stamped apparent indorsements.  The first stated:

"Without Recourse

" Pay to the Order of

"Wells Fargo Bank, N.A."

The indorsement was signed by Joan M. Mills, Vice President.  The second stated:

---

[1]Freddie Mac also named the Greene County Treasurer, the Ohio Department of Job and Family Services ("ODJFS"), and Wells Fargo Bank as party-defendants due to the possibility that those parties may claim an interest in the property.  ODJFS subsequently indicated that it had no interest in the property.

"Pay to the Order of

" * * *

"Wells Fargo Bank, N.A.

"Without Recourse

"Legacy Mortgage"

This indorsement was signed by Lynette Hanson, Vice President.[2]

{¶ 8}   On June 17, 2009, Freddie Mac filed a "Notice of Filing Assignment of Mortgage."   The notice attached an assignment of mortgage, dated May 15, 2009 (after the complaint was filed), and recorded on May 27, 2009, which transferred the Schwartzwalds' mortgage from Wells Fargo Bank to Freddie Mac.

{¶ 9}   On July 6, 2009, Freddie Mac moved for a default judgment against the Schwartzwalds.   The trial court denied the motion, because "[a]n examination of the file in this action reveals that the mortgage filed with the Greene County Recorder's Office on December 4, 2006, in Volume 2648, Page 149 was recorded with an incorrect legal description."   The court granted leave to Freddie Mac to file an amended complaint in order to add a count for reforming the mortgage to match the legal description approved by the Greene County Tax Map Department.   Freddie Mac subsequently filed an approved legal description, but indicated that it did not need to amend the complaint.

{¶ 10} According to Mrs. Schwartzwald, in September 2009, the Schwartzwalds received a letter from Wells Fargo denying their request for a short sale.   Mrs. Schwartzwald stated in her affidavit, "At no time prior to the receipt of the letter denying

---

[2]The stamped name is difficult to read, but it appears the last name is "Hanson."

approval of the short sale did Wells Fargo ever give me the impression that my short sale request would be denied. * * * It was only when we received the Court's Judgment Entry of September 29, 2009 [denying the motion for default judgment], did I realize that I had been misled by Wells Fargo."

{¶ 11} In October 2009, the Schwartzwalds moved to file an answer out of time. The motion was supported by an affidavit by Julie Schwartzwald, describing Wells Fargo's dilatory conduct in addressing the Schwartzwalds' request that Wells Fargo approve a short sale of their property and stating that Wells Fargo had told the Schwartzwalds "don't worry about" the foreclosure action. The Schwartzwalds also attached a proposed answer, which asserted a general denial and raised several defenses, including that Freddie Mac lacked standing, was not the real party in interest, and had "unclean hands."

{¶ 12} Freddie Mac renewed its motions for default judgment and, separately, moved for summary judgment. Freddie Mac's summary-judgment motion was supported by an affidavit by Xee Moua, Vice President of Loan Documentation for Wells Fargo, the servicing agent.

{¶ 13} On December 2, 2009, the trial court notified the parties that "[a] review of the file in this action reveals an item missing and needed in order to issue a decision on the Motion for Default Judgment filed by Plaintiff on July 6, 2009." The court ordered Freddie Mac to file, within 30 days, "the assignment that evidences the transfer of the original mortgage from Legacy Mortgage to its assignee and any subsequent assignments."

{¶ 14} On December 14, Freddie Mac filed two assignments of mortgage: (1) from Legacy Mortgage to Wells Fargo, dated November 27, 2006, and (2) from Wells Fargo to

Freddie Mac, dated May 15, 2009. On the same date (December 14), the court filed an agreed entry granting leave to the Schwartzwalds to file an untimely answer. Freddie Mac withdrew its pending motion for summary judgment. The answer was filed on December 18, 2009.

{¶ 15} In February 2010, Freddie Mac filed a new motion for summary judgment, supported by an affidavit from Herman John Kennerty, Vice President of Loan Documentation for Wells Fargo, the servicing agent. Kennerty stated that he had custody of the Schwartzwalds' account, that the records were compiled near the time of occurrence by persons with knowledge of the events, that the records were kept in the course of Wells Fargo's regularly conducted business, and that it was the regular practice to keep such records.

{¶ 16} Kennerty further averred, "Plaintiff is the holder of the note and mortgage which are the subject of the within foreclosure action," and he authenticated copies of the original note and mortgage, which were attached. Kennerty also authenticated an assignment of the mortgage from Wells Fargo to Freddie Mac, which "accounts for documented evidence that Plaintiff is the holder of the note and mortgage * * *." Kennerty stated that the note and mortgage were in default, that payment was due for January 1, 2009, and all subsequent payments, and that plaintiff had elected to accelerate the balance. Finally, Kennerty indicated that the principal balance of $245,085.18 was due with interest from December 1, 2008, at a rate of 6.25 percent per annum, as well as advancements for taxes, insurance, and other expenses.

{¶ 17} The Schwartzwalds opposed Freddie Mac's summary-judgment motion on

several grounds. First, they claimed that Freddie Mac had not established that it was the holder of the note and the mortgagee by assignment. They emphasized that the note attached to Kennerty's affidavit did not contain any indorsements on the note itself or any allonges. Similarly, the Schwartzwalds argued that Kennerty's affidavit did not explain "what right, if any, Wells Fargo bank had to assign the mortgage. On the face of the documents attached to Mr. Kennerty's affidavit, Legacy Mortgage is still the mortgagee under the Mortgage."

{¶ 18} Second, the Schwartzwalds claimed that Kennerty's affidavit did not establish the amount that was due, because "all Mr. Kennerty can accomplish through his affidavit is to authenticate business records, and establish them as such for purposes of hearsay exclusion. He cannot simply testify to the content of those records." The Schwartzwalds further claimed that because Freddie Mac did not hold the note and mortgage, it lacked standing to prosecute the case. Finally, the Schwartzwalds argued that Freddie Mac's conduct, through its servicing agent, constituted unclean hands and barred relief in foreclosure; they supported this argument with Julie Schwartzwald's affidavit describing her interactions with Wells Fargo regarding the proposed short sale of the property.

{¶ 19} In addition to opposing Freddie Mac's motion, the Schwartzwalds sought summary judgment on the ground that Freddie Mac lacked standing to prosecute its claim. They argued that the trial court should dismiss the action without prejudice on that basis.

{¶ 20} Freddie Mac responded to the Schwartzwalds' opposition memorandum, stating that it was the holder of the note via a blank indorsement affixed to the back of the

note. It stated that it was assigned the mortgage, as indicated in its assignments filed on December 14, 2009, as Exhibit A to the notice of filing assignment of the mortgage chain. Freddie Mac further argued that Kennerty's affidavit did not violate the hearsay rule, that it implicitly established Kennerty's personal knowledge, and that the affidavit was sufficient to establish the Schwartzwalds' default. Although Freddie Mac argued that it need not produce the loan history to support its motion for summary judgment, it provided a copy of the Schwartzwalds' payment history as an attachment to a supplemental affidavit from Jennifer Payne, Vice President of Loan Documentation. As to the Schwartzwalds' unclean-hands argument, Freddie Mac stated that it was permitted to advance its own interests and to enforce its contractual rights.

{¶ 21} The court scheduled a hearing before a magistrate for April 1, 2010, on the cross-motions for summary judgment. The record does not contain a transcript of that hearing, and it is unclear from the record what occurred.

{¶ 22} In April 6, 2010, Freddie Mac again filed an assignment of mortgage chain.

{¶ 23} On June 1, 2010, the trial court granted Freddie Mac's motion for summary judgment and denied the Schwartzwalds' motion for summary judgment. The trial court found that the allegations contained in Freddie Mac's complaint and the affidavit in support of its summary-judgment motion were true and that the Schwartzwalds had defaulted on the note and mortgage. The court entered judgment on the note in the amount of $245,085.18, plus interest and advancements, and ordered that the equity of redemption be foreclosed and the property sold. The court did not address the various legal arguments raised by the parties.

{¶ 24} The Schwartzwalds appeal from the trial court's judgment, claiming that the trial court erred in granting Freddie Mac's motion for summary judgment and in denying their motion for summary judgment.

II

{¶ 25} We begin with the Schwartzwalds' claim that the trial court should have denied Freddie Mac's summary-judgment motion. The Schwartzwalds state that Freddie Mac, in relying on Kennerty's affidavit, failed to meet its burden of proof for four reasons. First, they claim that Freddie Mac failed to establish that it was the holder of the note. Second, they argue that Freddie Mac lacked standing to institute the foreclosure action. Third, they contend that genuine issues of material fact existed as to whether Freddie Mac had unclean hands. Finally, the Schwartzwalds assert that Kennerty did not aver that he had reviewed their account, did not attach the loan-payment history, and provided only legal conclusions.

{¶ 26} Summary judgment should be granted only if no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66. An appellate court reviews summary judgments de novo, meaning that we review such judgments independently and without deference to the trial court's determinations. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588.

{¶ 27} Upon a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial. *Dresher v. Burt*

(1996), 75 Ohio St.3d 280, 292-293. Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of that party's pleadings. Id.; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. Id. Throughout, the evidence must be construed in favor of the nonmoving party. Id.

{¶ 28} With that standard in mind, we turn to the Schwartzwalds' arguments.

A. *Kennerty's Affidavit*

{¶ 29} Civ.R. 56(C) provides: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule." Although courts are generally confined to the types of evidence identified in Civ.R. 56(C) in ruling on a summary-judgment motion, the trial court may consider other types of evidence if there is no objection on that basis by the opposing party. *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 122 Ohio St.3d 260, 2009-Ohio-2871, ¶ 17.

{¶ 30} Civ.R. 56(E) sets forth the requirements for affidavits. It states that supporting and opposing affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the

affidavit." Civ.R. 56(E). "The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions." *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467; *Cincinnati Bar Assn. v. Newman*, 124 Ohio St.3d 505, 2010-Ohio-928, ¶ 7.

{¶ 31} In filing its motion for summary judgment in February 2010 (having withdrawn its previous motion), Freddie Mac relied upon Kennerty's affidavit and the exhibits attached thereto. Kennerty's affidavit does not state that he had reviewed the documents in the Schwartzwalds' account. However, personal knowledge may be inferred from the contents of an affidavit. *Bush v. Dictaphone Corp.*, Franklin App. No. 00AP1117, 2003-Ohio-883, ¶ 73; *CitiMortgage, Inc. v. Potvin*, Stark App. No. 2010CA112, 2010-Ohio-6561, ¶ 45; *Beneficial Mtge. Co. v. Grover* (June 2, 1983), Seneca App. No. 13-82-41. Although Kennerty's affidavit is terse, the information regarding the Schwartzwalds' account coupled with Kennerty's statement that he had custody of the Schwartzwalds' account was sufficient to demonstrate personal knowledge of the account's contents.[3] And at no point during the summary-judgment procedure did the Schwartzwalds claim that the account information was incorrect.

{¶ 32} Kennerty's affidavit further stated that an accurate reproduction of the mortgage was attached to the affidavit as Exhibit B and that "[a] copy of the Assignment,

---

[3]In a footnote in their reply brief, the Schwartzwalds state that Kennerty was a "robo-signer" of documents for Wells Fargo. Citing a May 2010 deposition of Kennerty posted on http://stopforeclosurefraud.com/depositions/, they assert that Kennerty routinely signed 50 to 150 documents per day and verified only the date on the document before signing. While this information may be true and raises other issues, it is not properly before us; it was not raised in the trial court and cannot be considered on appeal of the summary judgment.

which accounts for documented evidence that the Plaintiff is the holder of the note and mortgage * * * is attached hereto as Exhibit C." The mortgage attached to Kennerty's affidavit indicated that the Schwartzwalds executed a mortgage in favor of Legacy Mortgage. Exhibit C indicated that the mortgage was later assigned to Freddie Mac by Wells Fargo. Kennerty did not refer to or attach the assignment from Legacy Mortgage to Wells Fargo, dated November 27, 2006, which would evidence Wells Fargo's right to assign the mortgage.

{¶ 33} Nevertheless, the trial court did not err in considering the entire mortgage chain. The assignments of mortgage from Legacy to Wells Fargo and from Wells Fargo to Freddie Mac were filed with the trial court, at the court's request, on December 14, 2009. The assignments had been notarized and were self-authenticating. Evid.R. 902(8). The Schwartzwalds did not object to or contest the accuracy of those assignments. The assignment-of-mortgage chain was again filed on April 6, 2010, after the hearing on the cross-motions for summary judgment, without any apparent objection.

B. *Freddie Mac's Right to Enforce the Note*

{¶ 34} We turn to whether Freddie Mac met its burden on summary judgment of showing that it was the holder of the note and the assignee of the mortgage. Freddie Mac argues that even if it were not the holder of the Schwartzwalds' note, it was a nonholder in possession of the instrument with the rights of a holder. Thus, Freddie Mac argues that it was entitled to enforce the note and mortgage in this foreclosure action.

{¶ 35} R.C. 1303.31(A) identifies three classes of persons who are "entitled to enforce" an instrument, such as a note: (1) the holder of the instrument, (2) a nonholder in

possession of the instrument who has the rights of a holder, and (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.C. 1303.38 or R.C. 1303.58(D).

{¶ 36} With respect to negotiable instruments, "holder" means either:

{¶ 37} "(a) If the instrument is payable to bearer, a person who is in possession of the instrument;

{¶ 38} "(b) If the instrument is payable to an identified person, the identified person when in possession of the instrument." R.C. 1301.01(T)(1).

{¶ 39} "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." R.C. 1303.22(A). The transfer of an instrument vests in the transferee any right of the transferor to enforce the instrument. R.C. 1303.22(B).

{¶ 40} "Negotiation" is a particular type of transfer. Specifically, "negotiation" means "a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument." R.C. 1303.21(A). "Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." R.C. 1303.21(B).

{¶ 41} Here, Kennerty stated that Freddie Mac was the "holder" of the Schwartzwalds' note and mortgage and that "accurate reproductions of the originals as they exist in Plaintiff's files are attached hereto * * *." The note attached to Kennerty's affidavit

indicated that the Schwartzwalds executed a note in favor of Legacy Mortgage in the amount of $251,250. However, nothing on the note reflected that the note was subsequently negotiated by Legacy Mortgage. There are no indorsements on the note and the copy attached to the affidavit did not include an allonge. Thus, although Freddie Mac is apparently now in possession of the note, the lack of indorsements suggests that Freddie Mac received the note through transfer, but not negotiation. Accordingly, the note, on its face, contradicts Kennerty's statement that Freddie Mac was the "holder" of the note.

{¶ 42} Even if we were to consider the alleged allonge, which was attached to the copy of the note filed in April 2009, the final page is insufficient to prove that Freddie Mac was the holder of the note. The final page is blank, other than two indorsements. There is nothing that identifies the page as an allonge, nor does the page identify the note to which that page was allegedly affixed. And the two stamped indorsements appear to be in reverse order. The first indorsement appears to be a blank indorsement from Wells Fargo to Freddie Mac, and the second appears to be an indorsement from Legacy Mortgage to Wells Fargo. Neither of the indorsements is dated.

{¶ 43} We addressed a similar occurrence in *HSBC Bank USA, N.A. v. Thompson*, Montgomery App. No. 23761, 2010-Ohio-4158, as follows:

{¶ 44} "The first allonge is endorsed from Delta to 'blank,' and the second allonge is endorsed from Fidelity to Delta. If the endorsement[4] in blank were intended to be effective, the endorsement from Fidelity to Delta should have preceded the endorsement from Delta to 'blank' because the original promissory note is made payable to Fidelity, not to Delta.

---

[4]The Uniform Commercial Code uses "indorsement," the alternate spelling.

Delta would have had no power to endorse the note before receiving the note and an endorsement from Fidelity.

{¶ 45} "HSBC contends that the order of the allonges is immaterial, while Thompson claims that the order is critical. At the oral argument of this appeal, HSBC appeared to be arguing that the order of allonges would never be material. This is easily refuted by the example of two allonges, one containing an assignment from the original holder of the note to A, and the other containing an assignment from the original holder of the note to B. Whichever allonge was first would determine whether the note had been effectively assigned to A, or to B.

{¶ 46} "Thompson contends that because the last-named endorsement is made to Delta, Delta was the proper holder of the note when this action was filed, since the prior, first-named endorsement was from an entity other than the current holder of the note. In *Adams v. Madison Realty & Development, Inc.* (C.A.3, 1988), 853 F.2d 163, the Third Circuit Court of Appeals stressed that from the maker's standpoint:

{¶ 47} " '[I]t becomes essential to establish that the person who demands payment of a negotiable note, or to whom payment is made, is the duly qualified holder. Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument. These risks provide makers with a recognizable interest in demanding proof of the chain of title.' Id. at 168.

{¶ 48} "The Third Circuit Court of Appeals further observed that:

{¶ 49} " 'Financial institutions, noted for insisting on their customers' compliance with numerous ritualistic formalities, are not sympathetic petitioners in urging relaxation of

an elementary business practice. It is a tenet of commercial law that "[h]oldership and the potential for becoming holders in due course should only be accorded to transferees that observe the historic protocol." ' [*Adams*], 853 F.2d at 169 (citation omitted).

{¶ 50} "* * *

{¶ 51} "Because the last allonge endorses the note to Delta, and no further endorsement to HSBC was provided, the trial court did not err in concluding that HSBC was not the holder of the note when the litigation was commenced against Thompson." (Footnote added.) *Thompson,* 2010-Ohio-4158, at ¶ 69-76.

{¶ 52} In this case, the first indorsement was by Wells Fargo, which (as far as the record demonstrates) did not hold the note when the indorsement was made. The second indorsement was from Legacy Mortgage to Wells Fargo. Because there is no subsequent indorsement from Wells Fargo, the alleged allonge does not establish that Freddie Mac was ever the holder of the note.

{¶ 53} Freddie Mac claims that the assignments of mortgage from Legacy Mortgage to Wells Fargo and from Wells Fargo to Freddie Mac are sufficient to establish its right to enforce the note as a nonholder in possession. Freddie Mac cites *Bank of New York v. Dobbs*, Knox App. No. 2009-CA-2, 2009-Ohio-4742, and Section 5.4 of the Third Restatement of Property (Mortgages), arguing that the assignment of a mortgage is sufficient to establish the transfer of the note, and vice versa.

{¶ 54} In *Dobbs*, the Fifth District noted, "In Ohio it has been held that transfer of the note implies transfer of the mortgage. * * * 'Where a note secured by a mortgage is transferred so as to vest the legal title to the note in the transferee, such transfer operates as

an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered.' " *Dobbs*, 2009-Ohio-4742, at ¶ 29-30. *Dobbs* extended that rationale, holding that the assignment of a mortgage, without an express transfer of the note, was also sufficient to transfer both the mortgage and the note, if the record indicated that the parties intended to transfer both. Id. at ¶ 31.

{¶ 55} The assignment of mortgage from Legacy to Wells Fargo assigned, sold, and transferred all of Legacy's "rights, title and interest in and to a certain mortgage/deed of trust to secure the debt executed by Duane Schwartzwald and Julie O. Schwartzwald." The assignment from Wells Fargo to Freddie Mac stated that Wells Fargo "does hereby sell, assign, transfer, and set over until Federal Home Loan Mortgage Corporation [the Schwartzwalds' mortgage] * * *, together with the Promissory Note secured thereby and referred to therein; and all sums of money due and to become due thereon, and secured by the following real estate * * *." In addition, although the indorsements on the allonge to the note are inadequate to constitute negotiation under the UCC, the indorsements involved the same entities that were involved in the mortgage assignments and thus suggest that Legacy and Wells Fargo intended to transfer ownership of the note and mortgage together.

{¶ 56} In our view, the assignments reflect the intent of Legacy and Wells Fargo to convey both the mortgage and the note, along with the attendant right to enforce the note. We therefore conclude that Freddie Mac, as assignee of the Schwartzwalds' mortgage, was entitled to bring a foreclosure action, due to the Schwartzwalds' default, as a nonholder in possession with a right to enforce the note.

C. *Standing to Bring Foreclosure Action*

{¶ 57} The Schwartzwalds further claim that Freddie Mac lacked standing to prosecute the case, because it did not establish that it held the note or was the mortgagee by assignment at the time the complaint was filed.

{¶ 58} "Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim. It is an issue of law, so we review the issue de novo. To have standing, a party must have a personal stake in the outcome of a legal controversy with an adversary. This holding is based upon the principle that 'it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect.  It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies.'  *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371. * * *

{¶ 59} "An actual controversy is a genuine dispute between adverse parties. It is more than a disagreement; the parties must have adverse legal interests."  (Citations omitted.)  *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 9-10.

{¶ 60} Common-law standing is similar to Civ.R. 17(A)'s real-party-in-interest requirement.  The phrase "real party in interest" means " 'one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is *directly* benefitted or injured by the outcome of the case.' "  (Emphasis sic.)  *Countrywide Home Loans, Inc. v. Swayne*, Greene App. No. 2009 CA 65, 2010-Ohio-3903, ¶ 28, quoting *Shealy v. Campbell* (1985), 20 Ohio St.3d 23, 24.   Indeed, one who has standing by

possessing a "personal stake" in a lawsuit undoubtedly also has a "real interest in the subject matter of the litigation."

{¶ 61} The parties disagree on whether standing must be established when the complaint is filed. Freddie Mac asserts that standing is not jurisdictional and that the lack of standing may be cured, consistent with Civ.R. 17, which states: "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Freddie Mac contends that it was permitted to cure any standing defect prior to judgment and that it had done so by having a separately executed assignment of mortgage (assigning the mortgage from Wells Fargo to Freddie Mac) recorded before the filing for and granting of judgment.

{¶ 62} In contrast, the Schwartzwalds contend that standing and real-party-in-interest status are not synonymous. They assert that the plaintiff must be the real party in interest (consistent with Civ.R. 17) when judgment is entered, but standing is a threshold matter that must exist at the time the complaint is filed. In short, the Schwartzwalds view standing as a jurisdictional prerequisite, i.e., that "[s]tanding to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Environment* (1998), 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210.

{¶ 63} Some Ohio appellate districts have held, as Freddie Mac claims, that the lack of ownership of a mortgage or note at the time a complaint is filed does not preclude

judgment in favor of the plaintiff, so long as the plaintiff is the owner of the note and/or assignee of the mortgage at the time the summary judgment is entered. See *LaSalle Bank Natl. Assn. v. Street*, Licking App. No. 08 CA 60, 2009-Ohio-1855 (affirming judgment for bank as the "real party in interest" when the assignment of the mortgage and the note occurred one week after the complaint was filed); *Bank of New York v. Stuart*, Lorain App. No. 06 CA 8953, 2007-Ohio-1483, at ¶ 12-13 (plaintiff-lender was real party in interest for foreclosure even though it was assigned mortgage five months after complaint filed); *Wachovia Bank v. Cipriano,* Guernsey App. No. 09CA007A, 2009-Ohio-5470, ¶ 36.

{¶ 64} Other districts have taken a different view, requiring the plaintiff to own the note and the mortgage at the time that the complaint is filed. See *Wells Fargo Bank v. Jordan*, Cuyahoga App. No. 91675, 2009-Ohio-1092 (holding that Civ.R. 17(A) does not apply unless a plaintiff has standing in the first place to invoke the jurisdiction of the court); *Wells Fargo Bank, N.A. v. Byrd*, 178 Ohio App.3d 285, 2008-Ohio-4603, ¶ 24 (plaintiff could not cure lack of real-party-in-interest status at the time the complaint was filed by its subsequent acquisition of the note and mortgage).

{¶ 65} We have yet to take a position on this issue, and the Supreme Court of Ohio has accepted this issue for review in *U.S. Bank, N.A. v. Duvall*, 128 Ohio St.3d 1443, 2011-Ohio-1618, 944 N.E.2d 693.

{¶ 66} The term "jurisdiction" is used in several contexts. " 'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.' The term encompasses jurisdiction over the subject matter and over the person. * * * It is a 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any

proclamation by that court is void.'

{¶ 67} "The term 'jurisdiction' is also used when referring to a court's exercise of its jurisdiction over a particular case. The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction." (Citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11-12.

{¶ 68} "Jurisdiction over a particular case is an elusive concept, defined best by example. A common pleas court is a court of general jurisdiction and has subject matter jurisdiction over crimes committed by an adult. Nevertheless, where the common pleas court fails to strictly comply with procedures in a capital case, such as the failure to utilize a statutorily mandated three judge panel, it is an improper exercise of jurisdiction over the case. Id., syllabus." *T.M. v. J.H.*, Lucas App. Nos. L-10-1014, L-10-1034, 2011-Ohio-283, ¶ 66.

{¶ 69} "Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action. The lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter. Civ.R. 17. Unlike lack of subject matter jurisdiction, other affirmative defenses can be waived. Lack of standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court." (Citations and footnote omitted.) *State ex rel. Jones v. Suster* (1998), 84 Ohio St.3d 70, 77.[5]

_____

[5]We acknowledge that *Suster* has been distinguished in certain foreclosure cases. See, e.g., *MERS*

**{¶ 70}** If there is no jurisdiction in the court, then the judgment is void and can be challenged at any time. One could speculate on the effect of a holding that any judgment and decree of foreclosure ever granted wherein it can be shown that the mortgagee did not, at the time of the initial complaint, have standing and thus was not the real party in interest, results in the court's not having jurisdiction.

**{¶ 71}** The distinction is between lacking jurisdiction and improperly exercising the jurisdiction conferred on it. If a court improperly exercises its jurisdiction by granting foreclosure to a plaintiff lacking standing, the judgment would not be void but, rather, voidable on appeal.

**{¶ 72}** This appears to be why Civ.R. 17 allows amendment. The 1970 Staff Notes to the Rule give the example of an administrator who sues, in good faith, but under an invalid appointment or a bankrupt who sues without the trustee's permission. In each case, the plaintiff is given the opportunity to amend the pleadings, and the court is given the opportunity to exercise its jurisdiction.

**{¶ 73}** Lenders may "feel" that debtors should not avoid their debts or maintain the security they pledged only because a paperwork chain was not completed prior to the filing of a complaint; borrowers may "believe" that before their homes can be taken from them, a creditor must punctiliously comply with the "ritualistic formalities" to which they (the title owners) have been held almost since the "memory of man runneth not to the contrary."

**{¶ 74}** The objective is for a court to be presented with a real controversy between parties actually affected by its outcome (i.e., "have a personal stake in the outcome of a legal

_v. Mosley_, Cuyahoga App. No. 93170, 2010-Ohio-2886.

controversy with an adversary," *Kincaid*, 128 Ohio St.3d 322, 2010-Ohio-6036). Permitting supplemental or amended filings, pursuant to Civ.R. 17(A), allows the court to properly exercise its jurisdiction and resolve the controversy on its merits.

{¶ 75} Thus, in our view, the required analysis is the one put forth by Freddie Mac, i.e., that the lack of standing or a real-party-in-interest defect can be cured by the assignment of the mortgage prior to judgment. To hold otherwise would elevate lack of standing to a jurisdictional defect, a position that the Ohio Supreme Court has thus far rejected.

{¶ 76} It is undisputed that Freddie Mac had been assigned the Schwartzwalds' mortgage and was in possession of the note prior to the filing for and granting of summary judgment. Accordingly, the trial court did not err in implicitly rejecting the Schwartzwalds' standing argument.

D. *Doctrine of Unclean Hands*

{¶ 77} Finally, the Schwartzwalds claim that they raised a genuine issue of material fact as to whether Wells Fargo had "unclean hands." They state that Wells Fargo, as servicing agent for Freddie Mac, induced the Schwartzwalds into marketing their property, but failed to act in good faith when presented with an offer for a short sale. They claim that Wells Fargo prevented them "from limiting or eliminating their liability to Freddie Mac."

{¶ 78} "The maxim, 'he who comes into equity must come with clean hands,' requires only that the [party invoking equity] must not be guilty of reprehensible conduct with respect to the subject matter of [the] suit." *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42, 45, citing *Kinner v. Lake Shore & M.S. Ry. Co.* (1904), 69 Ohio St. 339, paragraph one of the syllabus. "For the doctrine of unclean hands to apply, the

party against whom it is asserted must be at fault in relation to the other party and in relation to the transaction upon which the claims are based." *Fiore v. Larger*, Montgomery App. No. 22949, 2009-Ohio-5408, ¶ 31, citing *Trott v. Trott* (Mar. 14, 2002)k, Franklin App. No. 01AP-852, 2002 WL 392286.

**{¶ 79}** In her affidavit, Julie Schwartzwald stated that Wells Fargo encouraged the Schwartzwalds to pursue a short sale of their property.[6] She asserted that upon notification to Wells Fargo that they had a buyer, Wells Fargo acted in a dilatory manner in reviewing the Schwartzwalds' request for approval of their short sale and led them to believe that the short sale would be approved. The request for a short sale was denied in September 2009, more than 120 days after the request was made.

**{¶ 80}** Even accepting Mrs. Schwartzwald's allegations as true, we cannot conclude that Freddie Mac had unclean hands that would preclude this foreclosure action. Once the Schwartzwalds defaulted on their note and the balance was accelerated, the lender was entitled to pursue a foreclosure action against them. See *Gaul v. Olympia Fitness Ctr., Inc.* (1993), 88 Ohio App.3d 310, 315. "A lender's decision to enforce its contract rights is not considered an act of 'bad faith.' " Id. at 320. Well Fargo's inefficiency, incompetence, or disregard for its customers and the public notwithstanding, Wells Fargo was under no obligation to approve the Schwartzwalds' short sale request.

**{¶ 81}** There is no indication that Wells Fargo led the Schwartzwalds to believe that they were not required to make mortgage payments while their request for approval of the short sale was pending. And to the extent that Wells Fargo told the Schwartzwalds not to

---

[6]By definition, a short sale involves a purchase price less than the amount owed to the lender.

worry about the foreclosure action that had been filed, any prejudice that might have resulted from those statements was negated by the trial court's granting of the Schwartzwalds' motion to file an answer out of time.   No other prejudice is alleged by the Schwartzwalds.

{¶ 82} The trial court did not err in granting Freddie Mac's motion for summary judgment.

### III

{¶ 83} The Schwartzwalds also claim that the trial court should have granted their cross-motion for summary judgment due to Freddie Mac's failure to establish standing.   In light of our reasoning regarding Freddie Mac's motion for summary judgment, this argument is not well taken.

### IV

{¶ 84} The uncertainty regarding standing and real party in interest, if not obvious from this opinion, is inherent in the Ohio Supreme Court's recognizing a conflict among the districts.   The Schwartzwalds are urged to join in the Supreme Court case.

### V

{¶ 85} The assignment of error is overruled.

{¶ 86} The trial court's judgment is affirmed.

. . . . . .Judgment affirmed.

GRADY, P.J., and FAIN, J., concur.